**Robert SCOTT, in his official capacity as Commissioner of Education for the State of Texas, Appellant,**

v.

**PRESIDIO I.S.D., Appellee.**

No. 03–07–00319–CV.

Court of Appeals of Texas, Austin.

Aug. 28, 2008.

Rehearing Overruled Oct. 1, 2008.

Bill Davis, Daniel L. Geyser, Office of the Attorney General, Austin, TX, for appellant.

Larry A. Baskind, Baskind & Hosford, PC., El Paso, TX, for appellee.

Richard L. Arnett, Brim, Arnett, Hanner, Conners & McCormick, Austin, for Samuel Pappa.

Before Justices PATTERSON, PURYEAR and PEMBERTON.

## *OPINION*

BOB PEMBERTON, Justice.

We grant the motion for rehearing filed by Robert Scott, in his official capacity as Texas Commissioner of Education, withdraw the panel opinion and judgment issued on May 7, 2008, and substitute the following in its place. We overrule as moot the Commissioner's motion for en banc reconsideration.

The legislature has provided Texas teachers an administrative appeal to the Commissioner from certain adverse personnel actions by their school districts. *See* Tex. Educ.Code Ann. §§ 21.301–.306 (West 2006). In turn, the legislature has provided, in section 21.307 of the education code, that either the teacher or the school district may challenge the Commissioner's decision through suit for judicial review,

termed a "judicial appeal." *See id.* § 21.307 (West 2006). In such suits, a district court reviews the Commissioner's decision under a substantial evidence standard on the administrative record. *See id.* Central to this appeal is subsection (a) of section 21.307:

> Either party may appeal the commissioner's decision to:
>
> (1) a district court in the county in which the district's central administrative offices are located; or
>
> (2) if agreed by all parties, a district court in Travis County.

*Id.* § 21.307(a). Also critical to this appeal is subsection (c) of section 21.307, which requires that "[t]he commissioner and each party to the appeal to the commissioner must be made a party to an appeal under this section." *See id.* § 21.307(c).

A teacher whom the Presidio Independent School District had terminated appealed that decision to the Commissioner, who ruled in the teacher's favor. The District filed a judicial appeal in Travis County district court. The District named both the teacher and the Commissioner as parties to its suit, as education code section 21.307(c) required. While the teacher agreed to the filing in Travis County district court, the Commissioner did not. Contending that section 21.307(a)(2) required his consent to suit in Travis County district court as a condition to the legislature's waiver of sovereign immunity against the suit, the Commissioner filed a plea to the jurisdiction.[1] The district court denied the plea. The Commissioner appealed the district court's order.[2]

The Commissioner's appeal presents two issues. First, the parties dispute whether the consent requirement in section 21.307(a)(2) is a condition on the legislative waiver of sovereign immunity so as to permit a judicial appeal to be filed in Travis County district court, as the Commissioner contends, or is merely a non-jurisdictional venue requirement, as the District argues. Second, the parties differ as to whether the Commissioner is among the "all parties" who must consent to the Travis County forum under section 21.307(a)(2). We conclude that education code section 21.307(a)(2) required the Commissioner's consent as a prerequisite to the legislative waiver of sovereign immunity necessary for judicial appeals to be filed in Travis County district court. Because the Commissioner undisputedly did not consent to suit there so as to confer jurisdiction under subsection (a)(2), and because the District's "central administrative offices" are unquestionably not located in Travis County so as to come within subsection (a)(1)'s waiver, we conclude that the district court erred in denying the Commissioner's plea to the jurisdiction.

Our resolution of both issues turns on construction of education code 21.307(a)(2). Statutory construction presents a question of law that we review de novo. *E.g., State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn,* 209 S.W.3d 83, 85 (Tex.2006). We consider the words in context, not in isolation. *State v. Gonzalez,* 82 S.W.3d 322, 327 (Tex.2002). We rely on the plain meaning of the text, unless a different meaning is supplied by

---

**1.** At the time of the district court's proceedings, the Hon. Shirley Neeley was serving as Commissioner of Education. We have substituted her successor, Robert Scott. *See* Tex. R.App. P. 7.2(a).

**2.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (West Supp.2007).

legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625–26 (Tex. 2008) (citing *Texas Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004); *Taylor v. Firemen's and Policemen's Civil Serv. Comm'n of City of Lubbock,* 616 S.W.2d 187, 189 (Tex.1981); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 356 (Tex.2004)); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Our analysis of the statutory text is also informed by the presumptions that "the entire statute is intended to be effective" and that "a just and reasonable result is intended," Tex. Gov't Code Ann. § 311.021(2)-(3) (West 2005), and consideration of such matters as "the object sought to be attained," "circumstances under which the statute was enacted," legislative history, and "consequences of a particular construction." *Id.* § 311.023(1)-(3), (5) (West 2005). We also presume that the legislature acted with knowledge of the background law. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990).

■ Furthermore, we must also employ special rules of construction that are implicated when, as here, a statute is asserted to have waived sovereign immunity. *See* *State v. Oakley,* 227 S.W.3d 58, 62 (Tex. 2007); *see also Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.,* 145 S.W.3d 170, 198 (Tex.2004) (right to judicial review in section 2001.171 of the APA "provides a limited waiver of sovereign immunity" because "the Legislature necessarily understood that state agencies would be sued in court by persons exercising that right"). When determining the extent to which section 21.307 has waived sovereign immunity, we are bound to comply with the legislature's mandate that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code Ann. § 311.034; *see Oakley,* 227 S.W.3d at 62. This requirement embodies the principle that courts should generally defer to the legislature to decide whether or to what extent sovereign immunity should be waived, so as to "preserve the legislature's interest in managing state fiscal matters through the appropriations process." Tex. Gov't Code Ann. § 311.034. This policy concern with preserving legislative control over how state funds are spent is implicated not only by the prospect of money damages awards,[3] but also by suits, like the District's, seeking to control the actions of a state officer acting within his or her statutory powers. *See Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n,* 600 S.W.2d 264, 265–70 (Tex.1980). Our deference to the legislature's policy judgment regarding waivers of sovereign immunity applies both to the decision to waive sovereign immunity at all and the

---

**3.** *See, e.g., Reata Constr. Corp. v. City of Dallas,* 197 S.W.3d 371, 375 (Tex.2006) ("A lack of immunity may hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes."); *Texas Natural Res. Conservation v. IT–Davy,* 74 S.W.3d 849, 854 (Tex.2002) ("We have consistently deferred to the Legislature to waive sovereign immunity from suit, because this allows the Legislature to protect its policymaking function.... [T]he Legislature is better suited than the courts to weigh the conflicting public policies associated with waiving immunity and exposing the government to increased liability, the burden of which the general public must ultimately bear.").

extent of any waiver, as it is the legislature's prerogative to control both and to impose whatever conditions and limitations on waivers as it deems appropriate. *Oakley,* 227 S.W.3d at 62; *see Tooke v. City of Mexia,* 197 S.W.3d 325, 331 (Tex.2006) (state cannot "be sued in her own courts without her consent, and then only in the manner indicated by that consent.") (quoting *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847)); *State v. Isbell,* 127 Tex. 399, 94 S.W.2d 423, 424 (1936) (state may be sued "only in the manner, place, and court or courts designated" by legislature).

■ Additionally, in 2005, the legislature amended the code construction act to further instruct courts that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (current version at Tex. Gov't Code Ann. § 311.034) (West Supp.2007). A "statutory prerequisite to a suit … against a governmental entity" refers to a step or condition that must be satisfied before the suit against the state can be filed. *See Dallas County v. Hughes,* 189 S.W.3d 886, 888 (Tex.App.–Dallas 2006, pet. denied) (observing that the ordinary meaning of "[a] prerequisite is something that is required beforehand" and holding that limitations period is not a "statutory prerequisite" for purposes of section 311.034); *see also Dallas County v. Coskey,* 247 S.W.3d 753, 755 (Tex.App.–Dallas 2008, pet. filed) (statute requiring notice *after* suit is filed is not a "statutory prerequisite" to suit); *see also* House Comm. on State Affairs, Bill Analysis, Tex. H.B. 2988, 79th Leg., R.S. (2005) ("Under current law, several statutes provide for a limited waiver of immunity against the government, but require that certain steps, known as statutory prerequisites, be taken

to take advantage of the waiver."). The legislature enacted this amendment to address "considerable confusion [that] has arisen in the courts regarding whether … compliance [with statutory prerequisites] is a jurisdictional matter or not." *See* House Comm. on State Affairs, Bill Analysis, Tex. H.B. 2988, 79th Leg., R.S. (2005).

## Is section 21.307(a)(2) a jurisdictional requirement?

■ Turning to the text of education code section 21.307(a)(2), we are persuaded that the requirement that "all parties" agree before a judicial appeal can be brought in Travis County district court is a "statutory prerequisite" under the meaning of government code 311.034 and, therefore, is jurisdictional. *See* Tex. Gov't Code Ann. § 311.034. As the Commissioner emphasizes, section 21.307(a)(2) states that "[e]ither party may appeal the commissioner's decision to … a district court in Travis County" "*if* agreed by all parties." Tex. Educ.Code Ann. § 21.307(a)(2) (emphasis added). Agreement "by all parties" to the Travis County forum is plainly a condition that must be satisfied before a judicial appeal can be brought there. It is thus a statutory prerequisite to such suits. *See Hughes,* 189 S.W.3d at 888 ("[a] prerequisite is something that is required beforehand."); Tex. Gov't Code Ann. § 311.011(a) ("[w]ords and phrases shall be … construed according to the rules of grammar and common usage.").

The District characterizes section 21.307(a)(2) as a non-jurisdictional venue requirement, suggesting that the phrase "[e]ither party may appeal the commissioner's decision" controls *if* the suit can be filed and that subsections (a)(1) and (2) govern *where* such a suit is filed. In fact, the Commissioner has acknowledged that section 21.307(a)(2) is in the nature of a venue provision. As a general rule, venue

requirements have not been considered to be jurisdictional, at least in modern times. *Loutzenhiser,* 140 S.W.3d at 360–61 (Tex. 2004) (filing suit in the wrong county does not deprive the trial court of jurisdiction); *Brown v. Owens,* 674 S.W.2d 748, 751 (Tex. 1984) (same); *see also Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000) (overruling *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (Tex.1926), "to the extent it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional."); *Mingus,* 285 S.W. at 1088 (holding that venue requirements governing suits to enforce worker's compensation awards were jurisdictional). But even assuming that the venue requirement in education code section 21.307(a)(2) would not otherwise be considered a *jurisdictional* "statutory prerequisite to suit," it is *a* "statutory prerequisite to suit" in Travis County district court nonetheless. The legislature has mandated in government code section 311.034 that we consider *any* "statutory prerequisite to suit" against a governmental entity to be jurisdictional. The controlling question here, in other words, is whether education code section 21.307(a)(2) is a "statutory prerequisite to suit" against the Commissioner in Travis County district court, regardless whether it would have been considered a jurisdictional limitation absent the 2005 amendments to government code section 311.034.

As noted, education code section 21.307(a)(2)'s consent requirement is a "statutory prerequisite" to a judicial appeal in Travis County district court under the ordinary meaning of the term. It is also a "statutory prerequisite" to such suits under the meaning that term has acquired in case law. As this Court has observed, "the collective term 'statutory prerequisites' encompasses 'a variety of irregularities'" that would not otherwise be considered to limit the court's jurisdiction. *Sierra Club v. Texas Natural Res.*

*Conservation Comm'n,* 26 S.W.3d 684, 686–87 (Tex.App.–Austin 2000) (quoting *Dubai,* 12 S.W.3d at 76), *aff'd, Texas Natural Res. Conservation Comm'n v. Sierra Club,* 70 S.W.3d 809 (Tex.2002). The Texas Supreme Court has used the term "statutory prerequisites" to suit or review to describe venue provisions. *See Dubai,* 12 S.W.3d at 76 (using the phrase to describe the venue requirements addressed in *Mingus*); *Grounds v. Tolar Indep. Sch. Dist.,* 707 S.W.2d 889, 891–92 (Tex.1986) (terming provisions of Term Contract Nonrenewal Act and APA fixing venue of administrative appeals in Travis County as "statutory prerequisites for review"). So has this Court. *Hartford Underwriters Ins. Co. v. Hafley,* 96 S.W.3d 469, 473 (Tex.App.–Austin 2002, no pet.) (holding that labor code section 410.252, which governs venue of worker's compensation appeals, was not jurisdictional; "[w]hen a statutory prerequisite to suit is such that it affects only venue, without making any substantive change in the court's inherent power, it should not be held jurisdictional."); *accord Zenith Star Ins. Co. v. Wilkerson,* 150 S.W.3d 525, 533 (Tex.App.–Austin 2004, no pet.); *see also Mayberry v. American Home Assurance Co.,* 122 S.W.3d 455, 456–57 (Tex.App.–Beaumont 2005, no pet.) (similarly terming labor code 410.252's venue provision a "statutory prerequisite"). We are to presume that the legislature was aware that "statutory prerequisites to suit" had acquired this meaning in the case law, *see Acker,* 790 S.W.2d at 301 (we are to presume that the legislature acted with knowledge of the background law), and we must give effect to the intent it manifested when choosing to use that term in government code section 311.034. *See* Tex. Gov't Code Ann. § 311.011(b) ("[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition

or otherwise, shall be construed accordingly.").

The District urges that we construe education code section 21.307(a)(2) and government code section 311.034 so as to "harmonize" them with "the common law's rule prohibiting litigants from consenting to subject matter jurisdiction." Under longstanding Texas law, subject-matter jurisdiction cannot be conferred by consent, waiver, or agreement. *See, e.g., Dubai,* 12 S.W.3d at 76 (quoting *Federal Underwriters Exch. v. Pugh,* 174 S.W.2d 598, 600 (Tex.1943)). The District reasons that, in light of this longstanding principle, we should construe section 21.307(a)(2) so as not to condition the subject-matter jurisdiction of a Travis County district court on the parties' agreement. However, the common-law principle on which the District relies, as the Commission points out, is a limitation against courts exercising jurisdiction that has not been vested in them by the constitution or statute, regardless whether the parties consent or waive objections to it. Education code section 21.307(a)(2), in contrast, explicitly vests jurisdiction in Travis County district courts to hear judicial appeals, although it conditions that jurisdiction on the consent of "all parties." The consent requirement thus does not represent an expansion of judicial power beyond the limits of the constitution and statute, but is a component of the statutory jurisdictional limits themselves. The common-law principle on which the District relies simply has no application here. While the consent requirement of section 21.307(a)(2) may perhaps be a departure from the common law notion that parties do not confer jurisdiction by agreement, it is not unusual for statutes to depart from the common law and we must conclude, based on the text of that provision and of government code section 311.034, that this is what the legislature intended to do here. It is the legisla-ture's prerogative to decide the extent of any waiver of sovereign immunity and any conditions it places upon that waiver. *Oakley,* 227 S.W.3d at 62.

We conclude that the consent requirement in education code section 21.307(a)(2) is a statutory prerequisite to the District's availing itself of the legislative waiver of sovereign immunity permitting judicial appeals to be brought in Travis County district court. We now turn to whether the District was required to obtain the consent of the Commissioner, in addition to the teacher, in order to come within the waiver.

**Was the Commissioner's consent required?**

■ Our resolution of the second issue turns on construction of the term "all parties" in education code section 21.307(a)(2). Section 21.307(a), again, provides that "[e]ither party may appeal the commissioner's decision to ... (2) if agreed by *all parties,* a district court in Travis County." Tex. Educ.Code Ann. § 21.307(a). The District argues that "all parties" is limited by subsection (a)'s preceding proviso that "*either* party may appeal ..." and, therefore, refers only to those parties. The reference to "either party," the District observes, contemplates the teacher and the school district, the parties to the administrative proceeding before the Commissioner from which a judicial appeal would be taken. *See id.* §§ 21.301–.306. The dissent adopts a similar approach focusing on subsection (a). The Commissioner, on the other hand, emphasizes subsection (c) of section 21.307, which requires that "*[t]he commissioner* and each party to the appeal to the commissioner *must be made a party* to an appeal under this section." *See id.* § 21.307(c) (emphasis added). The Commissioner reasons that because subsection (c) explicitly designated him as a

"party" within section 21.307, subsection (a)(2)'s reference to "all parties"—as opposed to "either party" or "both parties"—necessarily includes him. We agree with the Commissioner.

Subsection (c) informs construction of subsection (a)'s "all parties" in at least two ways. First, subsection (c) specifies that the Commissioner, in addition to "each party to the appeal to the commissioner," is a "party" to the judicial appeal. Second, by distinguishing between "each party to the appeal to the commissioner" and "the commissioner" and requiring that all be made "a party to an appeal under this section," subsection (c) demonstrates that the legislature contemplated two categories of "parties" in a judicial appeal—the teacher and school district who had been parties to the administrative proceeding before the Commissioner, and the Commissioner himself. It is thus highly significant that the legislature explicitly conditioned suit in Travis County on the consent of "*all* parties"—not "either party," "both parties," the parties "to the appeal to the commissioner," or similar terms that would exclude the Commissioner. Viewing section 21.307(a)(2) in its context within education code section 21.307 and chapter 21 as a whole, as we are required to do, the legislature's use of "all parties" necessarily contemplated not only the parties to the administrative proceeding before the Commissioner—the teacher and school district—but also the Commissioner. The District and dissent's argu-

ments to the contrary overlook subsection (c) and its implications.

The District further suggests that the legislature could not have intended to include the Commissioner among "all parties" whose consent to suit in Travis County is required under subsection (a)(2) because the Commissioner would not be served and ordinarily would not appear in the suit until some time after suit was filed. Because the Commissioner would thus not be a "party" in this respect at the time suit is filed, the District reasons that only the original parties to the administrative proceeding before the Commissioner could be the "all parties" referenced in subsection (a)(2). The flaw in this argument, as the Commissioner points out, is that *any* defendant in a "judicial appeal" suit would not be served and ordinarily would not appear until after the suit is filed. This would include not only the Commissioner, but also a teacher (if a school district is appealing) or a school district (if a teacher is appealing). In other words, under the District's reasoning, only the party filing the judicial appeal could be a "party" under subsection (a)(2). The District's argument thus would imply that the legislature intended a consent requirement it explicitly made applicable to "all parties" to actually mean that the party filing the judicial appeal can unilaterally dictate whether suit is filed in Travis County district court. We reject that notion. *See* Tex. Gov't Code Ann. § 311.021(2) (we presume that "the entire statute is intended to be effective").[4]

---

4. Similarly, though it does not advance this argument on appeal, the District, during the hearing on the plea to the jurisdiction, questioned how it could obtain the Commissioner's consent to file its judicial appeal in Travis County district court where education code section 21.306, "Ex parte communications prohibited," prohibited the Commissioner or his staff from "communicat[ing] with any party or any party's representative in connection

with any issue of fact or law except on notice and opportunity for each party to participate." *See* Tex. Educ.Code Ann. § 21.306 (West 2006). The dissent embraces this reasoning. Section 21.306 is contained within the provisions governing the administrative proceedings from which the judicial appeal—addressed in the succeeding section 21.307—is taken. The Commissioner is the tribunal during these administrative proceedings rath-

The District also questions the connection between this construction of education code section 21.307(a)(2) and the underlying policy purposes of sovereign immunity. It suggests that the legislature would not have intended to give the Commissioner veto power against getting sued in his "own backyard" when litigating in the school district's home county—e.g., Presidio County, hundreds of miles from Austin—would seemingly be more expensive to the state. However, as previously noted, the policy purposes underlying sovereign or governmental immunity have a broader concern with limiting judicial interference with legislative policy decisions and those of local governmental entities. *See Texas Natural Res. Conservation v. IT–Davy,* 74 S.W.3d 849, 854 (Tex.2002); *Printing Indus. Ass'n,* 600 S.W.2d at 265–70. In balancing these policy interests, the legislature saw fit to grant the Commissioner (like school districts and teachers) effectively a veto power against having to defend judicial appeals in Travis County district court. Whatever the merits of that judgment, it is not an absurd notion that the Texas Legislature intended it, as reflected in the text of education code section 21.307(a)(2). It is the legislature's prerogative to make such determinations

regarding whether and to what extent to waive sovereign immunity, and the conditions of such waivers. *Oakley,* 227 S.W.3d at 62; *Tooke,* 197 S.W.3d at 331; *Isbell,* 94 S.W.2d at 424.[5] We are bound to give effect to these legislative policy judgments.

It is undisputed that the District did not obtain the Commissioner's consent to bring its judicial appeal in Travis County district court. *See* Tex. Educ.Code Ann. § 21.307(a)(2). Nor is there any question that the District's "central administrative offices" are located in Travis County, the other basis for a waiver of sovereign immunity permitting suit there. *See id.* § 21.307(a)(1). Consequently, sovereign immunity bars the District's suit. We accordingly reverse the district court's order denying the Commissioner's plea to the jurisdiction and render judgment dismissing the District's judicial appeal for want of subject-matter jurisdiction.

Dissenting Opinion by Justice PATTERSON.

JAN P. PATTERSON, Justice, dissenting.

Reversing course on rehearing, a majority of this panel now concludes that the

---

er than a party. *See id.* §§ 21.301–.306. Section 21.306's prohibition against ex parte communications with the Commissioner is clearly addressed to that context.

5. Similarly, during the hearing on the District's plea to the jurisdiction, the district court expressed skepticism that the legislature could have intended education code section 21.307(a)(2) to require the Commissioner's consent as a jurisdictional requirement for a judicial appeal in Travis County district court because it would invite disputes, uncertainties, or gamesmanship among parties regarding whether they had consented to suit there. Relatedly, noting the absence of a transfer mechanism in section 21.307(a)(2), the district court expressed concern regarding the harsh implication that a case filed in error in

Travis County would be jurisdictionally barred. The dissent expresses similar concerns. We first observe that if a dispute regarding a party's consent to suit in Travis County were to arise, it would be determined by the district court in the same manner as other disputed jurisdictional facts. *See Texas Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227–28 (Tex.2004); *Hendee v. Dewhurst,* 228 S.W.3d 354, 368–69 (Tex.App.–Austin 2007, pet. denied). Furthermore, if there are concerns with this statutory scheme, they are among the policy interests that are within the legislature's prerogative to balance when determining the existence, extent of, and conditions for the waiver of sovereign immunity in education code section 21.307(a)(2).

consent requirement in subsection 21.307(a)(2) of the Texas Education Code is a jurisdictional statutory prerequisite within the meaning of section 311.034 of the Texas Government Code that requires Presidio to obtain the Commissioner's consent before prosecuting an appeal from the Commissioner's administrative order in the Travis County District Court. The majority's statutory construction of subsection 21.307(a)(2) ignores the plain language of the statute, renders other portions of the education code meaningless, leads to absurd results, and creates opportunities for gamesmanship. Because I disagree with the majority's interpretation of subsection 21.307(a)(2), I respectfully dissent.

For many years, Texas law recognized that statutory prerequisites were mandatory and jurisdictional. *See Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084 (1926). Eight years ago, the Texas Supreme Court overruled this longstanding precedent in favor of a new rule. *See Dubai Petroleum Inc. v. Kazi,* 12 S.W.3d 71, 76 (2000). In *Dubai Petroleum Inc. v. Kazi,* the supreme court determined that statutory prerequisites, while mandatory, were no longer jurisdictional. *Id.* at 76. The court rejected the dichotomy between statutory and common-law causes of action established in *Mingus v. Wadley* and its progeny on the ground that district courts in Texas were courts of general jurisdiction. *Id.* at 75–76; *see also* Tex. Const. art. V, § 8. Under this rationale, a party's failure to satisfy a statutory prerequisite did not deprive the district court of jurisdiction to hear the party's claim but merely determined whether a party "established their right under the statute to go forward with th[eir] suit." *Dubai,* 12 S.W.3d at 75–76. The court explained, "'The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality

to the right of the plaintiff to relief rather than to the jurisdiction of the court to afford it.'" *Id.* at 76–77 (quoting 21 C.J.S. *Courts* § 16 at 23 (1990)).

While this new rule proved workable in many cases, *Dubai* effected a sea change in those areas of law involving suits against governmental entities, especially in administrative law. *See, e.g., Hill v. Board of Trs. of the Ret. Sys. of Tex.,* 40 S.W.3d 676, 678–79 (Tex.App.–Austin 2001, no pet.) (holding content of motion for rehearing no longer jurisdictional, but merely established whether claim had been preserved); *Sierra Club v. Texas Natural Res. Conservation Comm'n,* 26 S.W.3d 684, 688 (Tex.App.–Austin 2000) (holding plaintiff's failure to comply with service requirement was no longer jurisdictional), *aff'd,* 70 S.W.3d 809 (Tex.2002); *but cf. King v. Texas Dep't of Human Servs.,* 28 S.W.3d 27, 31 (Tex.App.–Austin 2000, no pet.) (assuming without deciding that time limitations in Texas Commission on Human Rights Act are jurisdictional even after *Dubai*); *see also* Tyler Johnson, *Do Statutory Prerequisites Affect Jurisdiction to Hear Administrative Appeals in Texas after* Dubai?, 3 Tex. Tech J. Tex. Admin. L. 157 (2002) (discussing *Dubai*'s effect on administrative appeals in Texas); Elizabeth R. Sterling, *After* Dubai, *Are Procedural Prerequisites to Judicial Review Still Jurisdictional?,* State Bar of Texas: Twelfth Annual Advanced Administrative Law Course (Oct. 26–27, 2000). One of the primary concerns was how to reconcile the new rule established by the supreme court in *Dubai* with the doctrine of sovereign immunity. *See, e.g., King,* 28 S.W.3d at 31. This doctrine provides that a party may not sue the government unless the legislature has clearly and unambiguously consented to suit. *Tooke v. City of Mexia,* 197 S.W.3d 325, 331 (Tex.2006). Moreover, it has long been recognized that a

state may be sued "only in the manner, place, and court or courts designated" by the legislature. *State v. Isbell,* 127 Tex. 399, 94 S.W.2d 423, 424 (Tex.1936). After *Dubai,* questions arose about how to construe the many statutory requirements imposed by the legislature when it consented to suit, thereby waiving its sovereign immunity. *See Hill,* 40 S.W.3d at 678–79; *King,* 28 S.W.3d at 31; *Sierra Club,* 26 S.W.3d at 688.

Such requirements had long been considered jurisdictional under the rule established in *Mingus. See, e.g., Grounds v. Tolar Indep. Sch. Dist.,* 707 S.W.2d 889, 891–92 (Tex.1986), *abrogated by Dubai Petroleum Inc. v. Kazi,* 12 S.W.3d 71 (Tex. 2000). In an effort to resolve the confusion and restore the *Mingus* rule for those suits against governmental entities, the legislature, in 2005, amended section 311.034 of the Code Construction Act to include the following language:

> Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.

Act of May 25, 2005, 79th Leg., R.S., ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (codified at Tex. Gov't Code Ann. § 311.034 (West Supp.2007)).

Thus, we are presented with two questions: (1) is subsection 21.307(a)(2) a statutory prerequisite within the meaning of government code section 311.034; and, if the answer to this question is "yes," then (2) was the school district required to obtain the commissioner's agreement to file its suit for judicial review in Travis County? The majority now answers both of these questions in the affirmative. But, even if one assumes for the sake of argument that the answer to the first question is "yes,"[1] I submit that the answer to the second question must still be "no."

### Was the school district required to obtain the Commissioner's consent before filing its appeal in Travis County?

There is no dispute that section 21.307 clearly and unambiguously waives the state's sovereign immunity from suit by its express language that "[e]ither party may appeal the commissioner's decision...." Tex. Educ.Code Ann. § 21.307(a) (West 2006). The dispute turns on *where* a party may file an appeal. Subsection 21.307(a)(1) allows a party to file an appeal in "a district court in the county in which the [school] district's central administrative offices are located." *Id.* § 21.307(a)(1). Subsection 21.307(a)(2) allows a party to file an appeal "*if agreed by all parties,* [in] a district court in Travis County." *Id.* § 21.307(a)(2) (emphasis added). It is this clause, "if agreed by all parties," that has given rise to this appeal.

The Commissioner urges that this clause "if agreed by all parties" includes the Commissioner because subsection 21.307(c) requires the Commissioner to be made a party to the appeal. *See id.* § 21.307(c). The school district counters that, when read in its proper context, this clause does not include the Commissioner because the Commissioner would not appeal his own decision. *See id.* § 21.307(a) (allowing either party to appeal the Commissioner's decision).

The majority correctly discerns that this is a matter of statutory construction, which

---

1. For purposes of this dissent, I assume without deciding that education code subsection 21.307(a)(2) is a statutory prerequisite within the meaning of government code section 311.034. Nevertheless, in light of the fundamental rule that parties cannot confer subject-matter jurisdiction by consent or agreement, *see, e.g., Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App.1995); *Moore v. Blagge,* 91 Tex. 151, 38 S.W. 979, 984 (1897), it is possible that it is not.

we review de novo. *See Scott v. Presidio Indep. Sch. Dist.*, No. 03–07–00319–CV, 266 S.W.3d 533–34, *supra*, 2008 WL 3984366 (Tex.App.–Austin 2008). Beyond that, however, the majority misconstrues the plain language of the statute and erroneously concludes that Presidio was required to obtain the Commissioner's consent before filing its suit for judicial review in Travis County.

In its entirety, subsection 21.307(a) states:

(a) Either party may appeal the commissioner's decision to:

(1) a district court in the county in which the district's central administrative offices are located; or

(2) if agreed by all parties, a district court in Travis County.

Tex. Educ.Code Ann. § 21.307(a). The plain language of this statute suggests that there are two possible parties to the administrative proceedings before the Commissioner who may wish to appeal the Commissioner's decision—the teacher or the school district.[2] Although the statute does not define the term "party" or "parties," nothing in the plain language of the statute suggests that the Commissioner would be included in those terms, since the "party" would be appealing the Commissioner's decision, and the Commissioner presumably would not appeal his own decision. When the legislature uses a word in a statute in one sense and with one meaning, and thereafter uses the same word in describing the same subject matter, it is understood that the latter word is used in the same sense and with the same meaning as the former. *Brown v. Darden*, 121 Tex. 495, 50 S.W.2d 261, 263 (1932); *see also Rylander v. Fisher Controls Int'l,*

*Inc.,* 45 S.W.3d 291, 301 (Tex. App.–Austin 2001, no pet.) (rejecting the Comptroller's attempt to give different meanings to the same word in two statutes on the same subject matter). This rule of statutory construction also applies when the words or phrases are substantially the same. *Brown,* 50 S.W.2d at 263. Read in its proper context with the introductory clause of subsection 21.307(a), the legislature's use of the term "parties" in subsection 21.307(a)(2) can only refer to those parties authorized to appeal the Commissioner's decision in the introductory clause of subsection 21.307(a). *See id.* For this reason, I would conclude that the plain language of subsection 21.307(a) does not include the Commissioner within the terms "party" or "parties" and, therefore, Presidio was not required to obtain the Commissioner's consent before filing its appeal in a Travis County district court.

This construction is consistent with the remainder of section 21.307 and with other provisions of the education code. While it is true that subsection 21.307(c) requires the Commissioner to be made a party to an appeal of his decision, there is nothing in the language of subsection 21.307(a) or (c) that requires the Commissioner to consent to filing an appeal in Travis County. The mere fact that subsection (c) requires the Commissioner to be made a party to the appeal does not suggest that the Commissioner must agree to the venue in which an appeal is filed. Indeed, the prohibition against ex parte communications in section 21.306 of the education code would appear to prohibit such an agreement between the Commissioner and any party who participated in the administrative proceedings before the Commissioner.

---

**2.** It is conceivable that there might be more than two parties in the administrative proceedings before the Commissioner. In some circumstances, there may be more than one teacher who was subject to disciplinary proceedings before the school district and participated in an appeal to the Commissioner.

*See* Tex. Educ.Code Ann. § 21.306 (West 2006) (prohibiting ex parte communications between the commissioner and his staff and any party). Although the majority asserts in footnote 4 of its opinion, *supra*, that the prohibition against ex parte communications is limited to the context of administrative proceedings before the Commissioner, nothing in section 21.306 limits the prohibition against ex parte communications in the manner suggested by the majority. Sections 21.306 and 21.307 are both included in subchapter G of chapter 21 of the education code. There is nothing in the plain language or structure of the education code that supports the majority's construction limiting the prohibition against ex parte communications only to administrative proceedings before the Commissioner. *See id.* §§ 21.306–.307. The majority's conclusion that a party is required to obtain the Commissioner's consent to file an appeal in Travis County would render the prohibition against ex parte communications in section 21.306 meaningless.

Likewise, the majority's interpretation of subsection 21.307(a)(2) leads to absurd results and encourages gamesmanship. The supreme court has cautioned that courts should not construe a statute in a manner that leads to absurd results when another, more reasonable interpretation exists. *National Plan Adm'rs, Inc. v. National Health Ins. Co.*, 235 S.W.3d 695, 701 (Tex.2007); *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 n. 20 (Tex.2004). Yet the majority does just that when it interprets subsection 21.307(a)(2) to require Presidio to obtain the Commissioner's consent before filing an appeal from the Commissioner's decision in Travis County. Nothing in the statute suggests a legislative intent to allow the Commissioner to dictate where an appeal must be filed. *See* Tex. Educ.Code Ann. § 21.307(a). Rather the plain language of the statute leaves that decision to the parties that participated in the administrative proceedings before the Commissioner. *Id.*

As a practical matter, for purposes of venue, the Commissioner—a statewide official—resides in Travis County, the seat of state government. *See Burton v. Rogers*, 504 S.W.2d 404, 406 (Tex.1973); *Gulf Coast Bus. Forms, Inc. v. Texas Employment Comm'n*, 498 S.W.2d 154, 154 (Tex. 1973) (per curiam). In addition, the Texas Attorney General, who represents the Commissioner in the appeals brought under section 21.307, also resides in Travis County for purposes of venue. *See Burton*, 504 S.W.2d at 406; *Gulf Coast Bus. Forms*, 498 S.W.2d at 154. As the arbiter of the decision being appealed, the Commissioner should be indifferent to the venue in which an appeal is filed.[3] The majority's construction of subsection 21.307(a)(2), however, leads to the absurd result that the Commissioner, not the parties appealing his decision, can—and should—dictate the venue of any appeal under section 21.307.

Having waived sovereign immunity to allow a party to appeal from the Commissioner's decision, surely it is absurd to conclude that the legislature intended the Commissioner, and not the appealing parties, to control where that appeal must be taken. The rule in Texas is that the plaintiff—or the appealing party, in this instance—"gets the first choice of venue by filing suit." *In re Team Rocket, L.P.*, 256 S.W.3d 257 (Tex.2008); *see also In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999) (describing Texas venue law). By giving the parties to the administrative

---

**3.** Counsel for the Commissioner conceded as much when counsel agreed with the district court that the Commissioner "would virtually always agree to venue in Travis County."

proceedings the right to file suit against the Commissioner to challenge his decision, the legislature acknowledged this general rule of Texas law and signaled its intent to let those parties, not the Commissioner, determine venue. The majority ignores this general principle in favor of a rule that gives the Commissioner authority to dictate where the appeal must be brought.

The majority's construction also encourages gamesmanship. In this case, the Commissioner prefers the venue of Presidio County at a distance of almost 500 miles. As the colloquy between counsel for the Commissioner and the district court below reveals, the Commissioner does not want to consent to venue in Travis County in this case because "it provides an opportunity to dismiss ... [a]nd once it's dismissed, it's too late to bring [an appeal] in another county." Counsel's stated rationale for this result is that "while the Commissioner might not object to Travis County, the Commissioner likes to have h[is] decisions stand." Thus, the Commissioner concedes that, at least in this case, he has ulterior motives for denying his consent to bring an appeal in Travis County. Having waived sovereign immunity to allow appeals from the Commissioner's decisions, it is unreasonable to conclude that the legislature intended for the Commissioner to deprive a party from bringing an appeal simply by denying his consent to a particular venue.

A more reasonable construction of the statute would be that the legislature never intended to require an appealing party to obtain the Commissioner's consent. A more reasonable construction of the statute would allow the choice of where to file an appeal to be made by those parties appealing the Commissioner's decision, not the Commissioner. Because the majority adopts what I believe to be an unreasonable and unworkable construction of the statute, I respectfully dissent.